Díaz et al., Demandantes y Apelantes, v. Rosado et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de Arecibo en pleito sobre reivindicación y daños y perjuicios.

No. 2247.—Resuelto en mayo 18, 1922.

Alegaciones—Incongruencia entre las Alegaciones y la Prueba.—De acuerdo con los artículos 136, 137 y 142 del Código de Enjuiciamiento Civil no es bastante con que una parte meramente alegue durante el juicio que ha sido inducida a error, a causa de incongruencia entre las alegaciones y la prueba, sino que deberá demostrar de algún modo a satisfacción de la corte sentenciadora que la incongruencia es esencial.

Los hechos están expresados en la opinión.

Abogado de los apelantes: Sr. L. Llorens Torres.

Abogados de los apelados: Sres. A. M. Villamil y F. R. Flores.

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

La demanda enmendada presentada en este caso alega, entre otros particulares, lo siguiente:

"3. Los demandantes son actualmente los únicos y legítimos dueños en comunidad de la siguiente propiedad inmueble:

"'Parcela de terreno de 4 cuerdas, equivalentes a 1 hectárea 57 áreas 21 centiáreas de extensión, situada en el barrio de El Pueblo, del término municipal de Barceloneta, Distrito Judicial de Arecibo, y linda por el norte, actualmente con la calle denominada Llenza Feliú, y solares de la Sucesión Martínez & Eguen, antes terrenos de la Central Plazuela adquiridos de don Bonocio Llenza; por el oeste con terrenos que actualmente son de la Central Plazuela y antes fueron de don Bonocio Llenza; por el este con el río Manatí; y por el sur con el camino que conduce al Puente Marrero, hoy calle de la Unión.'

"4. Los demandantes, en unión de su hermano fallecido don Manuel Díaz Llenza, adquirieron la mitad de dicha parcela de terreno a título de herencia de su abuelo don Bonocio Llenza y Feliú según el testamento que otorgara en Manatí ante el notario don Francisco I. Náter el 6 de febrero de 1891, y la otra mitad a título de herencia de su madre doña Joaquina Llenza y Gago según su testamento otorgado en 1893 ante el mismo notario. Y se hace constar aquí que en la fecha de dichas adquisiciones los demandantes eran todos· menores de edad, y que la participación que correspondió al otro heredero fallecido en la menor edad D. Manuel Díaz Llenza, pasó a la propiedad de su padre don Manuel Díaz Fonseca a título de herencia y de este último a los demandantes por igual título hereditario.

"5. Dichas cuatro cuerdas de terreno se hallan actualmente atravesadas de norte a sur por una calle denominada 'Calle del Conde de Caspe'· y de este modo el terreno en cuestión está dividido en dos trozos de norte a sur separados. por la referida calle. Tanto el trozo del este como el del oeste se hallan actualmente divididos en solares, formando cada trozo una manzana de solares. La manzana del este, o sea, la comprendida entre la ·calle del 'Conde de Caspe' y el río Manatí se halla actualmente dividida en diez solares; de los cuales, contando desde el norte, ·el solar número 1 lo está detentando y poseyendo actualmente el demandado Francisco Estela; el número 2 lo detenta Alejandro Fernández; el número 3 Ramona Balseiro; el. número 4 Manuel Massó; el número 5 Evangelista Caballero; el número 6 Santiago Acevedo; el número 7 Primitivo Mercado; el número 8 Sucesión Martínez & Eguen y la denominada Sucesión de Avelino Natal; el número 9 Ambrosio Sánchez; y el número 10 José I. Santana. Y la manzana del oeste, o sea, la comprendida entre la calle del 'Conde de Caspe' y los terrenos de la Central Plazuela se halla actualmente dividida en nueve trozos o solares, de los cuales contando desde el norte, el solar número 1 lo están detentando y poseyendo los demandados Adolfo Eguen y Vicente Arzuaga; el número 2 lo posee y detenta la sociedad que hemos denominado 'Culto Protestante;' el 3 lo detenta Isabel Caballero; el 4 los demandados Venancio González e Isaac Martínez; el 5 Evangelista Caballero; el 6 Fernando Suria y Juan T. Puig; el 7 Alejandro Fernández y Antonio Rodríguez Avilés; el 8 Ramón Rosado; y el 9 Ramón Balseiro. Y aquí alegamos que los referidos demandados están todos poseyendo, ocupando y detentando el terreno

descrito sin ningún título legal para ello y contra la voluntad y sin el consentimiento de los demandantes.''

Los demandantes apelan de una sentencia que declara sin lugar la demanda por los motivos consignados en la opinión del juez sentenciador de la cual extractamos lo siguiente:

''Fué anotada la rebeldía de los demandados, 'El Culto Protestante,' y José Y. Santana.

''Los demandados contestaron negando los hechos esenciales de la demanda y alegando hallarse cada uno en posesión de un solar en el pueblo de Barceloneta, quieta, pública y pacíficamente, adquirido con justo título de otra persona, y como legítimos dueños.

''Antes del juicio, y a virtud de escrito de transacción presentado por los demandantes por su abogado Sr. Llorens Torres, y los demandados Ramón Balseiro y Ramón Rosado, por el suyo Sr. Huyke, la corte, a petición de los mismos y conformes a lo dispuesto en el artículo 313 del Código de Enjuiciamiento Civil, dictó sentencia en cuanto a los dichos demandados, de acuerdo con la presentada transacción.

''Al terminar la prueba de los demandantes, en el acto del juicio, a petición del abogado del demandado Venancio González, con la conformidad del abogado de los demandantes, la corte, sobreseyó el caso en cuanto a dicho demandado Venancio González.

      *        *        *        *        *        *        *

''En las operaciones divisorias del caudal relicto al fallecimiento de don Bonocio Llenza y Feliú, verificadas en mayo de 1892, les fué adjudicado a los demandantes 'doscientos pesos en el valor de cuatrocientos o mitad del dominio de un predio rústico en el barrio del 'Pueblo' término municipal de Barceloneta, de cuatro cuerdas, colindantes por el norte y oeste, con tierras de don Bonocio Llenza; este, con el río Manatí y sur con don Bonocio Llenza y camino que conduce al Puente Marrero. Es de observarse que en la anterior descripción no se menciona la calle del Conde de Caspe del pueblo de Barceloneta y sí en las de otras fincas comprendidas en la misma escritura particional.

''Los demandantes han presentado como antecedentes de título de la finca que tratan de reivindicar, la expresada adjudicación hecha en la mencionada escritura de mayo de 1892, y otra escritura

de 11 de febrero de 1846, otorgada cuarenta y seis años antes, en la que consta la venta hecha por don Ignacio Guzmán a don Bonocio Llenza de una cuerda de terreno, que no se describe, y de tres más, que tampoco se describen.

"También han presentado las operaciones divisorias del caudal relicto al fallecimiento de doña Joaquina Llenza y Gago, practicadas por escritura de 11 de febrero de 1895, en las que se adjudica a los demandantes, 'un condominio por la mitad de su valor por oncena parte y en común y proindiviso, en un predio rústico radicado en el barrio del 'Pueblo,' término municipal de Barceloneta, compuesto de cuatro cuerdas, colindantes por saliente el río Manatí, norte tierras de doña Joaquina Gago, poniente doña Clementina Llenza y sud el camino que conduce a Puente Marrero, dividida en dos fincas por la calle del Conde de Caspe.

"Como es de verse, los tres documentos producidos por la parte demandante no establecen relación alguna de identidad entre las fincas que en ellos se describen, y la que se pretende reivindicar, y desde luego, mucho menos pueden demostrar la de todos y cada uno de los solares que se reclaman, con la finca que se describe en la demanda, y que formen parte de ella.

"Los demandados, en sus respectivas contestaciones, negaron poseer finca alguna perteneciente a los demandantes, y éstos con arreglo al artículo 108 de la Ley de Evidencia, estaban en el deber de presentar evidencia para probar su afirmación.

"No han demostrado los demandantes del modo completo y eficaz que requieren las acciones sobre reclamación y reivindicación de bienes, la identidad de la finca descrita en el hecho III, de la demanda, como adquirida por mitad en el año 1895, por herencia de su madre doña Joaquina Llenza y la otra mitad por legado de su abuelo don Bonocio Llenza; y mucho menos, que todos y cada uno de los solares indicados en el hecho V de la demanda sin describirse, formen parte de la finca descrita en el hecho III.

"Con arreglo al artículo 450 del Código Civil, el poseedor en concepto de dueño tiene a su favor la presunción legal de que posee con justo título y no se le puede obligar a exhibirlo.

"En un pleito sobre reivindicación no basta describir la finca que se trata de reivindicar, sino que es necesario probar además que esa finca está en poder de los demandados. Tal prueba no existe en el presente caso.

"Aún cuando el hecho de no haber justificado los demandantes la identidad de la finca reclamada, releva a los demandados de la prueba de sus respectivos títulos de posesión, en virtud de la presunción legal que a su favor determina el artículo 450 del Código Civil, es lo cierto que ellos han presentado documentos públicos creditivos de su respectiva legítima adquisición de los solares que ocupan con sus casas, y de una posesión de los mismos como tales dueños que unas veces por sí sola y otras computadas con la de sus vendedores constituye a su favor un título de prescripción adquisitiva, determinante de la extinción del derecho a acción de los demandantes, si alguno tuvieren, toda vez que, como dice el Tribunal Supremo de España en su sentencia de 2 de marzo de 1912: 'la prescripción adquisitiva, tanto la ordinaria como la extraordinaria, acaso en pugna en determinada circunstancia con el ideal de la Justicia, es, al fin, una institución jurídica social establecida por los legisladores de todos los pueblos y tiempos que enlazándose con el origen y fundamento de la propiedad constituye título legítimo para que el poseedor de una cosa, que su verdadero dueño abandona, la haga aquél suya, si este último, durante el lapso de tiempo que las leyes estatuyen deja de recuperarla, pues si así no fuere, ni habría consagración de la fortuna, ni se evitarían las contiendas a que la inestabilidad del dominio pudiera dar lugar.''

"No se ha probado por los demandantes, que hayan estado alguna vez en posesión de la finca y sí se ha probado que desde allá por el año 1882 comenzó a urbanizarse el pueblo de Barceloneta, sin que ni los demandantes ni sus causantes aparezcan en todo ese largo período de tiempo hasta el presente, verificando acto alguno de dueños sobre porción determinada de terreno que reclamara como suyo, ni que estuvieran o hayan estado en la posesión material del mismo y por el contrario se ha probado por los demandados, como hemos dicho con una prueba documental pública, inscrita en su mayor parte, y testifical, el poseer éstos por sí y sus antecesores, pacíficamente, sin interrupción y en concepto de dueños, con justo título de transmisión del dominio y buena fe, por más de diez años, los solares que ocupan con sus casas y establecimientos respectivos.

*          *          *          *          *          *          *

"Es un hecho declarado por el testigo de los demandantes, Guillermo Carrión, que el pueblo de Barceloneta, se fundó en el año 1882 y entonces también la calle del Conde de Caspe que divide el

pueblo, comprándose sucesivamente los terrenos y fabricándose las casas.

"El testigo Venancio González Olivo, declara que el pueblo de Barceloneta se fundó en el año 1882, en el cual llegó él y ya existía abierta la calle del Conde de Caspe, y a los lados de ésta varias casas, continuándose fabricando en ese sitio; y el testigo Fernando Suria, de cincuenta y seis años de edad, y que dice que ha vivido siempre, toda su vida, en el pueblo de Barceloneta, declara que cuando la tormenta de San Ciriaco poseía la manzana del lado oeste de la calle del Conde de Caspe, 'E. Giorgetti y Cía.' y la otra Miguel Arzuaga, quienes la poseían en 1898, desde cinco años antes, siendo esos los solares que hoy ocupan los demandados.

"Estos, como hemos dicho, han producido una prueba documental completa justificativa de su respectivo derecho de propiedad, sobre el correspondiente solar ocupado por cada uno de ellos."

No se hacen señalamientos de error por separado pero del alegato de los apelantes citamos lo suficiente para mostrar los fundamentos por virtud de los cuales se solicita la revocación de la sentencia, a saber:

"1. La corte apelada erró al decidir, como fundamento de su sentencia, que hay falta de claridad y precisión en las alegaciones de la demanda.

"2. La corte apelada erró al desestimar la demanda fundándose en que hay falta de causa de acción, o sea, que la demanda no contiene las alegaciones necesarias para determinar la acción reivindicatoria que en ella se ejercita. Tal excepción fué propuesta por los demandados, y la corte, al decidir ese punto como excepción previa, resolvió en contra de los demandados, decidiendo que la demanda contiene todas las alegaciones necesarias.

"3. La corte apelada erró al decidir que no basta acreditar el derecho a virtud del cual se adquirió la cosa reclamada sino que es necesario justificar el dominio actual, pues si bien es cierto que tal doctrina aparece de acuerdo con la jurisprudencia sentada por esta honorable corte en el caso de *Quintero* v. *Sosa,* no lo es menos que tal doctrina ha sido posterior y reciéntemente modificada por nuestra suprema autoridad jurídica.

"4. La corte erró en su opinión al decidir que no basta que los

demandantes hayan probado su título hereditario y que sus causantes poseyeron el inmueble reclamado, sino que debieron probar también que ellos (los demandantes) lo estuvieron poseyendo algún tiempo. Tal es un craso error, pues es elemental que el heredero hace suya la posesión de su causante.

"5. La corte apelada erró al decidir que la acción de los demandantes estaba prescrita; pues, en primer lugar, tal defensa no fué puesta por ninguno de los demandados, y en segundo lugar no se probaron en el juicio todos los hechos necesarios para dicha prescripción. Y por iguales razones la corte erró al basar su fallo en la prescripción adquisitiva del dominio por parte de los demandados.

"6. La corte apelada también erró en la apreciación de la prueba, ya que de la prueba documental y testifical presentada por los demandantes, quedaron plenamente probadas todas las alegaciones de la demanda que habían sido impugnadas en las diferentes contestaciones.

"7. La corte apelada erró durante la sustanciación del juicio, al admitirle a los demandados pruebas documentales y testificales sobre materias no alegadas como defensa en la contestación; a cuyo efecto consta en nuestras oposiciones y excepciones tomadas en las páginas 99, 103, 108, 112, 146 y 164 de la transcripción de la evidencia, en cuya última página, al admitir dichas pruebas el honorable juez de la corte apelada, lo hizo bajo el fundamento de que tiene la práctica de no negar prueba.

"8. La corte apelada erró también en sus resoluciones durante el interrogatorio al notario Juan Z. Rodríguez, que figura en las páginas 167 y siguientes de la transcripción. En dicho interrogatorio, en que aparecen las objeciones de los demandantes, se puede ver que la corte admite preguntas sobre materias no alegadas; y en él aparece también el error de la corte en su fallo general, al decidir que los demandantes no probaron su título y la identidad del inmueble, pues en la página 168, con motivo de dicho interrogatorio, aparece el abogado de los demandados admitiendo que la parcela reclamada por los demandantes y poseída en varios solares por los demandados, es la misma que los demandantes heredaron de su madre doña Joaquina Llenza, pero dice que los demandantes no son dueños porque doña Joaquina Llenza la vendió antes de morir, y para probarlo presenta la declaración del notario Juan Z. Rodríguez. Entendemos, por tanto, que al presentar tal prueba los demandados y al hacer tales manifestaciones su abogado señor Flores, quedaron admitidas las alegaciones esenciales de los demandantes;

y ahora sólo falta saber si los demandados probaron ser cierto que doña Joaquina Llenza vendió dicha parcela antes de morir.

"9. La corte erró también en la resolución que le dió al incidente que figura en la página 172 de la transcripción. Dicho incidente es otra admisión que los demandados hicieron en el mismo sentido que la anterior, pues querían probar que ellos son dueños de los solares que se les reclaman por haberlos adquirido de la madre y causante de los demandados. Al formular nuestra oposición en aquel momento hicimos constar las razones y nos abstenemos ahora de molestar reproduciéndola, limitándonos a pedir que esta Corte Suprema las tenga en cuenta en su resolución, a cuyo efecto damos por reproducidas aquí nuestras razones expuestas en las páginas 172 y 173 de la transcripción, ampliadas en la página 182 de la misma.

"10. Y asimismo la corte apelada erró durante la sustanciación de la evidencia documental y declaraciones testificales, al desestimar las objeciones de los demandantes, sobre las cuales se tomaron excepciones que damos aquí por reproducidas como fundamentos de tales errores."

Una de las contestaciones después de formulada excepción previa por no aducir la demanda hechos suficientes para determinar una causa de acción, a la que siguen varias admisiones y negativas específicas y una negativa general de todas las alegaciones de la demanda que no hayan sido admitidas expresamente en la contestación, es la siguiente:

"1. El demandado Juan T. Puig alega: que él posee en la actualidad en el pueblo de Barceloneta, quieta, pública, pacíficamente y con justo título debidamente inscrito en el registro de la propiedad un solar que hubo por compra que de él hizo a don Fernando Suria, según escritura pública otorgada ante el notario don José Alegría Santos, en el pueblo de Barceloneta a 24 de julio de mil novecientos catorce, y que se encuentra debidamente inscrita en el Registro de la Propiedad de Arecibo al folio primero vuelto del tomo veintiuno de Barceloneta, finca número novecientos cuarenta y nueve inscripción segunda.

"Y se alega ahora por este demandado, que su vendedor don Fernando Suria adquirió dicha finca por compra que de ella hizo a don Evangelista Caballero, según escritura pública otorgada ante el notario don Manuel Paz Urdaz, inscrita al folio primero del tomo veintiuno de Barceloneta finca número novecientos cuarenta y nueve ins-

cripción primera, habiéndola poseído este vendedor con justo título y en concepto de dueño por espacio de muchos años, alegándose además que don Evangelista Caballero a su vez poseyó dicho solar con justo título y sin interrupción alguna.

"2. El demandado Antonio Rodríguez Avilés alega: que el solar que él posee en el pueblo de Barceloneta forma parte, o mejor dicho, es la mitad del que don Juan T. Puig compró a don Fernando Suria, pertenece a este demandado por compra que de él hizo según escritura otorgada en 8 de abril de 1915 ante el notario Angel Villamil, poseyéndolo por tanto con justo título y sin oposición de persona alguna.

"3. El demandado Isaac Martínez alega: que el solar y casa que él posee en el pueblo de Barceloneta lo hubo por compra que de él hizo a don Venancio González Olivo según escritura pública otorgada en Barceloneta en 21 de enero de 1913 ante el notario don José Alegría Santos, y que se encuentra debidamente inscrito en el registro de la propiedad al folio 71 vuelto del tomo 15 de Barceloneta, finca número 781 inscripción sexta. Y se alega ahora por este demandado, que don Venancio González poseyó dicho solar por espacio de muchos años con justo título y sin interrupción alguna.

"4. El demandado Santiago Acevedo alega: que un solar que posee en el pueblo de Barceloneta lo hubo por compra que de él hizo a don Miguel Arzuaga según escritura número 70 otorgada ante el notario don Francisco Prado Morales en el pueblo de Manatí a 9 de mayo de 1906, habiéndolo poseído desde dicha fecha quieta, pública y pacíficamente de buena fe y con justo título. Y se alega además que don Miguel Arzuaga también poseyó dicho solar sin oposición de persona alguna y lo tenía inscrito en el registro de la propiedad al folio 175 del tomo 14 de Barceloneta finca número 756 inscripción primera.

"5. El demandado Ambrosio Sánchez alega: que posee un solar en el pueblo de Barceloneta por compra que de él hizo a don Luis Arzuaga como apoderado de don Miguel Arzuaga según escritura otorgada en Barceloneta a 10 de noviembre de 1906 ante el notario E. Fernández Vanga, y se encuentra inscrita en el registro de la propiedad al folio 177 del tomo 16 de Barceloneta, sección segunda de Manatí, finca número 283 inscripción primera. Y se alega ahora por este demandado que su vendedor don Miguel Arzuaga también poseyó por espacio de muchos años dicho solar sin interrupción ni oposición de persona alguna.

"6. El demandado Manuel Massó alega: que el solar que posee

en el pueblo de Barceloneta lo hubo por compra que de él hizo a don Miguel Arzuaga según escritura pública otorgada en el pueblo de Manatí el 3 de agosto de 1905 ante el notario Francisco Prado Morales, inscrita en el registro de la propiedad al folio 222 del tomo 14 de Barceloneta sección segunda de Manatí, finca número 762 inscripción primera. Alega ahora este demandado que dicho solar lo poseyó don Miguel Arzuaga con justo título, debidamente inscrito en el registro de la propiedad por espacio de muchos años, sin que persona alguna les haya interrumpido en su posesión.

"7. Todos los demandados aquí representados, alegan, que los solares anteriormente expresados no han sido ni son parte de la parcela de terreno descrita en el hecho tercero de la demanda, negándose así que ninguno de dichos solares se encuentra incluído en dicha parcela de terreno.

"8. Los demandados también alegan, que ninguno de ellos detenta ni disfruta ningún solar que pertenezca o haya pertenecido a los demandantes en esta acción, alegándose además, que dichos demandantes no poseen ni han poseído en ninguna fecha ninguna parcela de terreno ni parte de ella que esté comprendida dentro de los límites de los solares antes indicados no teniendo así ningún título inscrito, ni eficiente para su inscripción en el registro de la propiedad."

En otra contestación después de una excepción previa y admisiones y negativas semejantes, se dice lo siguiente:

"El demandado Primitivo Mercado alega: que él posee en la actualidad en el pueblo de Barceloneta un solar que tiene inscrito en el registro de la propiedad al folio 52 vuelto del tomo 17 de Barceloneta, sección segunda de Manatí, finca número 838 inscripción segunda. Que dicho solar lo está poseyendo con justo título, quieta, pública y pacíficamente desde el 30 de mayo de 1909 en que lo adquirió por compra que de él hizo a don Eusebio Terrón Santiago según escritura pública número 197 otorgada dicho día ante el notario Manuel Paz Urdáz. Se alega ahora por este demandado, que su vendedor también poseyó por espacio de muchos años con justo título, quieta, pública y pacíficamente dicho solar, y sin oposición de persona alguna.

"2. El demandado aquí representado alega, que el solar anteriormente expresado no ha sido ni es parte de la parcela de terreno descrita en el hecho tercero de la demanda.

"3. Este demandado también alega, que él no detenta, ni disfruta ningún solar que pertenezca o haya pertenecido a los demandantes en esta acción, alegándose además, que dichos demandantes no poseen ni han poseído en ninguna fecha ninguna parcela de terreno ni parte de ella que esté comprendida dentro de los límites del solar antes indicado, no teniendo dichos demandantes ningún título, derecho ni interés sobre dicho solar.

"El demandado Francisco Estela alega: que él posee en la actualidad en el pueblo de Barceloneta un solar que hubo su esposa por compra que de él hizo a don Bonocio Ramos según escritura número 25 otorgada ante el notario don Eduardo Acosta Quintero, en Manatí a 9 de julio de 1912. Que dicho solar lo está poseyendo con justo título, quieta, pública y pacíficamente desde la fecha de su adquisición, alegándose además, que don Bonocio Ramos hubo dicho solar por compra que de él hizo a don Esteban Oliví y Laureano quien también lo poseyó a título de dueño por espacio de muchos años.

"2. El demandado Francisco Estela asimismo alega, que el solar anteriormente expresado no ha sido ni es parte de la parcela de terreno descrita en el hecho tercero de la demanda.

"3. Dicho demandado también alega, que él no detenta, ni disfruta ningún solar que pertenezca o haya pertenecido a los demandantes en esta acción, alegándose además que dichos demandantes no poseen ni han poseído en ninguna fecha ninguna parcela de terreno, ni parte de ella que esté comprendida dentro de los límites del solar antes indicado, no teniendo dichos demandantes ningún título, derecho ni interés sobre dicho solar."

Otros dos demandados después de hacer ciertas admisiones en su contestación alegan:

"III. Niegan los demás hechos de la demanda, y en su lugar afirman: que Alejandro Fernández García poseyó y Antonio Rodríguez Avilés posee el solar número siete a que se refiere el hecho quinto, en virtud de compra que hizo el primero de dichos señores a Ramón Rosado, y han ejercido y ejercen su derecho de buena fe, con justo título, y abiertamente; y en cuanto al solar número dos lo posee Alejandro Fernández por igual título de compra y también de buena fe, públicamente y con justo título. Y alegan además que la finca de cuya reivindicación se trata jamás fué adjudicada a los deman-

dantes a título de herencia, ni adquirieron la propiedad de la misma en esa ni en ninguna otra forma.''

En otra contestación que fué presentada después de desestimada la excepción previa formulada por los demandados se alega lo siguiente:

''Ramón Balseiro, Ramón Rosado, Fernando Suria, Evangelista Caballero, Venancio González, Isabel Caballero, Vicenta Arzuaga, Ramona Balseiro, Sociedad Martínez & Eguen, M. Martínez & Eguen, Adolfo Eguen y Sucesión de Avelino Natal, demandados en el caso que arriba se expresa, comparecen por conducto de su abogado H. Díaz, y contestando la demanda alegan y exponen:

''1ª. DEFENSA.

''Estos demandados niegan todos y cada uno de los hechos que en la demanda se indican y que no estén conformes con las siguientes alegaciones:

''2ª. DEFENSA.

''1. Reclaman los demandantes diez onzavas partes proindivisas de la parcela de terreno de cuatro cuerdas que en la demanda describen, sin describir asimismo, determinando sus colindancias, esas diez onzavas partes. Y afirman que dentro de la totalidad de dichas cuatro cuerdas, detentan cada uno de los demandados ciertas cantidades de terreno sin determinar la superficie, ni las colindancias de lo que cada uno detenta.

''2. Los demandantes, que no son dueños en totalidad de las predichas cuatro cuerdas, sólo ostentan en la demanda, como base de la acción reivindicatoria de diez onzavas partes de dichas cuatro cuerdas, su carácter de herederos testamentarios de don Bonocio Llenza y Feliú y de doña Joaquina Llenza y Gago.

''3. En la demanda no se afirma que la predicha parcela de cuatro cuerdas esté inscrita en el registro de la propiedad a favor de los primitivos causantes don Bonocio Llenza, doña Joaquina Llenza, ni de los demandantes. Los demandados que producen esta contestación que poseen terrenos en el barrio del pueblo o poblado de Barceloneta, los adquirieron de personas distintas de don Bonocio Llenza Feliú, de doña Joaquina Llenza y Gago y de los demandantes, teniendo dichos demandados inscritos los títulos de sus adquisiciones en el registro de la propiedad, y no habiendo nunca formado parte

esas adquisiciones de las cuatro cuerdas que en la demanda se relacionan.''

Según se ha expresado anteriormente por el juez sentenciador, los demandados Balseiro y Rosado fueron eliminados por virtud de una transacción.

No consta que se hubiera impugnado la suficiencia de ninguna de estas contestaciones en la corte, ya mediante excepción previa o en otra forma.

De conformidad con las anteriores citas que hace el apelante encontramos en las páginas indicadas lo siguiente:

''ABOGADO SR. FLORES. Presento también una certificación del Registro de la Propiedad de Arecibo, creditiva de que Evangelista Caballero poseía en Barceloneta un solar que es el mismo que se describe en la demanda.

''ABOGADO SR. LLORENS. Nos oponemos a esa prueba, porque no es materia de defensa. Porque en la contestación el demandado Caballero dice que no ha poseído terrenos en esa parcela.

''HONORABLE JUEZ. Admitida la prueba.

''ABOGADO SR. LLORENS. Tomamos excepción, fundándonos en que la prueba no es pertinente con las alegaciones de la contestación.

''HONORABLE JUEZ. La corte hace constar que de no admitir esta prueba por el fundamento que se excepciona podría considerarse como prejuicio de la corte sobre la prueba de identificación de los demandados. Letra B. Demandados.

     *      *      *      *      *      *      *

''ABOGADO SR. FLORES. Presentamos también como prueba una escritura otorgada por Manuel Massó a Evangelista Caballero de fecha 11 de octubre de 1907.

''ABOGADO SR. LLORENS. Es la misma que la objeción anterior.

''HONORABLE JUEZ. La misma resolución y márquese con la letra C, demandados.

''ABOGADO SR. LLORENS. La misma excepción y nos oponemos por las mismas razones.

     *      *      *      *      *      *      *

''ABOGADO SR. FLORES. Presentamos también como prueba una certificación del registrador de la propiedad, creditiva de que Vicenta Arzuaga tiene inscrito el dominio de una casa y solar que se describe, en el pueblo de Barceloneta; y relacionado con esa misma

certificación, una escritura de venta otorgada por Manuel Díaz Fonseca y su esposa Joaquina Llenza Gago a Miguel Arzuaga. ·

"ABOGADO SR. LLORENS. Nos oponemos a esta prueba, porque si se trata de presentar un título la mejor prueba es el título y no la inscripción; y la segunda razón es, porque Vicenta Arzuaga no planteó esta cuestión de defensa. Es el mismo caso que el anterior.

"HONORABLE JUEZ. Respecto a lo primero la corte tiene la jurisprudencia sobre el caso, para cuando se trata de reivindicar.

"ABOGADO SR. LLORENS. Tomamos excepción por la misma razón anterior, y además, porque no es la mejor prueba de la alegación que se pretende probar.

"HONORABLE JUEZ. La corte resuelve la primera por la razón expuesta y segunda, porque no se trata de demostrar el dominio, sino de demostrar un medio de adquisición. Letra D, demandados.

\*        \*        \*        \*        \*        \*        \*

"ABOGADO SR. FLORES. Presento una escritura No. 24, otorgada por Rafael San Millán a favor de Adolfo Eguen, en su carácter de gestor de la mercantil que gira en Barceloneta bajo el nombre o razón de Martínez y Eguen, ante el notario Santiago B. Palmer, el 6 de febrero de 1916.

"ABOGADO SR. LLORENS. Es la misma cuestión que antes, en que no se alega esa defensa.

"HONORABLE JUEZ. La misma resolución general.

"ABOGADO SR. LLORENS. Tomamos excepción.

"HONORABLE JUEZ. Admitida y márquese con la letra E, demandados.

\*        \*        \*        \*        \*        \*        \*

"ABOGADO SR. FLORES. Escritura de Félix Massó a Alejandro Fernández, otorgada en 22 de septiembre de 1911.

"ABOGADO SR. LLORENS. La contestación de este señor está en que niega todos los hechos de la demanda, y se trae esa escritura que es sobre otros extremos.

"ABOGADO SR. FLORES. Es una escritura de retroventa.

"HONORABLE JUEZ. No se admite esa prueba por ser un título transitorio.

"ABOGADO SR. FLORES. Presento también la escritura otorgada por Ramón Balseiro y su esposa a favor de Fernando Suria.

"ABOGADO SR. LLORENS. Nos oponemos a esa prueba por la misma razón que hemos dicho de las anteriores, y además porque se trata de un título no inscrito.

"ABOGADO SR. FLORES. En relación con esa escritura presento

una certificación del registrador de la propiedad, de que esa escritura está inscrita.

"Abogado Sr. Llorens. Pues solamente la oposición general que hemos hecho y nuestra excepción.

"Honorable Juez. La misma resolución, y márquese la escritura con la letra L, y la certificación con la letra Ll, demandados.

"Abogado Sr. Flores. Esta misma certificación que la presento para relacionarla con la escritura de Venancio González a Isaac Martínez.

*     *     *     *     *     *     *

"Abogado Sr. Flores. Y además, presento como prueba general en la defensa de todos los demandados, una certificación del registrador de la propiedad creditiva, de que Bonocio Llenza y Feliú y Joaquina Llenza y Gago, Luis Díaz Llenza, etc., o cualquiera otra persona, no tienen inscritos a su favor la posesión o dominio de una parcela de terreno de cuatro cuerdas de extensión, situada en el barrio del pueblo, término municipal de Barceloneta.

"Abogado Sr. Llorens. Nos oponemos a esta prueba porque en nuestra demanda no hay ninguna alegación de que esa parcela de terreno esté inscrita. No tiene pertinencia esta certificación. La cuestión de que una finca esté inscrita o no, no es motivo de prueba de que no pertenece a una persona.

"Honorable Juez. ¿Con qué fin se presenta la certificación?

"Abogado Sr. Flores. Para corroborar el hecho de que los demandantes no han poseído ni han tenido el dominio de las cuatro cuerdas.

"Honorable Juez. Yo la admito porque tengo la práctica de no negar prueba. Letra M, demandados.

"Abogado Sr. Llorens. No tomamos excepción en cuanto a esa prueba."

Los artículos 136–37 y 142 de nuestro Código de Enjuiciamiento Civil, que indican la forma en la cual debe considerarse una incongruencia que no es esencial así como otros defectos y errores que no afecten a lo esencial de los derechos de las partes, se citan íntegramente en el caso de *El Pueblo* v. *Zamorano*, 28 D. P. R. 722, y no es necesario reproducirlos aquí.

Véase también el texto y casos citados en el de *Guzmán* v. *American Railroad Company*, 29 D. P. R. 402.

En el caso de *Standard Oil Company* v. *Brown,* 218 U. S. 78, en la página 84, se dice lo siguiente:

"Es muy conocida y elemental la regla de que las alegaciones y las pruebas deben ser congruentes, pero no se exige una rigurosa exactitud. En el caso de *Nash* v. *Towne,* 5 Wall. 689, 698, se dice que las modernas decisiones en cuanto a la congruencia entre las alegaciones y la prueba son más liberales y razonables que las anteriores y declara que la regla es de acuerdo con el estatuto en las cortes federales 'dictar sentencia de conformidad con la ley y el derecho envuelto en la acción.' Se observó que 'es la regla general esablecida en los tribunales de los Estados que ninguna incongruencia entre las contenciones de una alegación (*pleading*) y las pruebas ofrecidas para sostenerla se considerará esencial a menos que sea de tal naturaleza que induzca a error a la parte contraria al sostener su acción sobre los méritos.' El último comentario que hace la corte es que prescindiendo de esos estatutos, sin embargo, ninguna incongruencia debe nunca considerarse como esencial cuando la alegación y la prueba concuerdan substancialmente. Véanse también los casos de *Liverpool and London and the Globe Ins. Co.* v. *Gunther,* 116 U. S. 113; *B. & P. R. R. Co.* v. *Cumberland,* 176 U. S. 232, 238.''

"Y," se ha dicho, "que de acuerdo con tales estatutos no es bastante con que una parte alegue meramente que ha sido inducida a error, sino que debe probarse a satisfacción de la corte. Generalmente debe presentarse un *affidavit* que muestre en qué particular ha sido sorprendida o inducida a error la parte." 31 Cyc. 703, y casos citados.

No hubo insinuación alguna en la corte inferior, ni sugiere tampoco el alegato de los apelantes, que en ninguna forma fueran sorprendidos o inducidos a error en su perjuicio estos demandantes.

Las otras objeciones a la admisión de pruebas son en su mayor parte del mismo tenor general, y en tanto pudieran considerarse meritorias en un sentido técnico estricto, no se ha demostrado perjuicio. No vemos tal error manifiesto en la apreciación de la prueba por el que estemos justificados para intervenir con la conclusión a que llegó la corte infe-

rior de que los demandados probaron sus varias defensas afirmativas, que fueron alegadas por ellos en forma más o menos vaga y defectuosa; y los errores, si algunos se cometieron en otros respectos, no eran perjudiciales.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf y Aldrey.

El Juez Asociado Sr. Franco Soto no intervino en la resolución de este caso.