SALVADOR CARRASQUILLO, demandante y apelante, *v.* GABRIEL RIPOLL, demandado, y BERNARDINO MALDONADO, interventor y apelado.

Núm. 8062.—*Sometido:* Marzo 7, 1940.   *Resuelto:* Marzo 19, 1940.

*Gaspar Gerena Bras,* abogado del apelante; *Diego E. Ramos,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

En satisfacción de una sentencia que Salvador Carrasquillo obtuvo contra Gabriel Ripoll, se adjudicó al primero una finca rústica de 31 cuerdas propiedad del segundo. Para obtener la posesión de la finca, instó Carrasquillo un procedimiento de desahucio en precario contra Ripoll en la Corte de Distrito de Arecibo, y firme la sentencia que se dictó a su favor, el 10 de agosto de 1938 fueron lanzados de ella no sólo el demandado Ripoll, si que también Bernardino Maldonado, que no fué parte en el pleito.

El 22 del mismo mes radicó Maldonado una moción solicitando permiso para intervenir en el pleito de desahucio, acompañando su moción de un proyecto de demanda jurada. Después de oír a las partes y con la oposición de Carrasquillo, la corte, por resolución de 21 de septiembre de 1938, permitió la intervención.

La demanda enmendada de intervención, luego de referirse al procedimiento de desahucio contra Ripoll y al lanzamiento de que fué objeto el interventor, alega que por varios años antes de tener efecto el lanzamiento, el interventor se hallaba en la posesión material de una porción de la finca, de cinco cuerdas, que describe en la demanda, a virtud de contrato de aparcería celebrado con Ramón Larracuente, teniendo en dicha parcela ciertas plantaciones que describe; que no fué notificado ni tuvo conocimiento del pleito de desahucio instituído por Carrasquillo de que antes se ha hecho referencia; que el lanzamiento contra el interventor fué llevado a cabo por sorpresa, sin dársele oportunidad de

ser oído en corte; que dicho lanzamiento es nulo toda vez que el interventor nunca ha estado unido al demandado Ripoll por vínculo alguno y además porque la finca en cuestión jamás fué de Ripoll, sino que por el contrario es y ha sido por más de veinte años consecutivos de la exclusiva propiedad de Ramón Larracuente, hoy su sucesión, la cual no ha sido parte en el pleito antes mencionado. Termina la demanda de intervención con súplica de que se declare nulo el lanzamiento del interventor; que se le restituya en la posesión material en que se hallaba de las cinco cuerdas mencionadas, y que se condene al demandante en el pleito de desahucio a pagar los daños y perjuicios causados al interventor como resultado del lanzamiento de que fué objeto.

La contestación negó las alegaciones esenciales de la demanda que acabamos de reseñar y como "Materia Nueva" alegó Carrasquillo que la finca había sido de Ripoll; que el interventor poseía la parte de la finca que reclama por cuenta de Ripoll y que tuvo conocimiento de dicho pleito con anterioridad al lanzamiento, "no habiendo intervenido para alegar derechos, si algunos tenía, a la finca en cuestión, por lo que incurrió en negligencia inexcusable." Concluye suplicando se desestime la demanda de intervención, con imposición de costas, gastos y honorarios de abogado.

Por los méritos de la prueba la corte inferior dictó resolución ratificando el lanzamiento del interventor y condenando a Salvador Carrasquillo a pagar la cantidad de $100 como precio de las plantaciones en cuestión, suma que debía consignar Carrasquillo en la secretaría de la corte inferior dentro de los diez días siguientes a la fecha de dicha resolución, disponiendo además que se permitiese al interventor retirar de la finca la casa que habitaba, dentro de los diez días siguientes a la consignación de la cantidad mencionada.

Fundamentando su resolución dice el juez de la corte inferior:

"En la vista del caso el interventor sostuvo una teoría distinta a la que expuso en su demanda, pues declaró que estaba en posesión

de las cinco cuerdas por haber comprado a Larracuente dos cuerdas y por haberle arrendado tres. Declaró también sobre todos los plantíos y sobre la casa que tiene en dicha parcela.

"No hemos quedado convencidos de que Larracuente vendiera al interventor porción alguna de esa finca, y sería dudoso que una venta verbal sobre una porción del inmueble pudiera ahora causar perjuicio a terceros adquirentes, con títulos inscritos y a virtud de subastas judiciales.

"Se desprende de la situación presentada que el demandante en este caso desahució al interventor por entender que era un agregado en la finca que dependía de la persona que fué demandada. No obstante, no aparece que Gabriel Ripoll, el demandado en el caso de desahucio, se entendiera y continuara las relaciones que existían entre el interventor y el anterior dueño o poseedor de la finca.

"Aun aceptando que el interventor Bernardino Maldonado estuvo bien lanzado, sería injusto que no se le abonara el importe de sus plantaciones y que perdiera la casita que tiene en la porción de terreno. Es verdad que él pudo utilizar el derecho que le concede la ley de desahucio para la valoración de esos plantíos en el momento del lanzamiento, pero teniendo en cuenta que no fué notificado en forma alguna oficial de la demanda de desahucio ni del lanzamiento y que pudo haber desconocido su derecho por no haber tenido oportunidad de consultar con expertos, pues no fué notificado previamente, la Corte entiende que habiéndose declarado sobre el valor de esos plantíos en la vista de la intervención, podemos en forma equitativa establecer un justiprecio para que se haga justicia completa en este caso."

Apeló Carrasquillo para ante este tribunal y en el alegato que presentó en apoyo de su recurso imputa a la corte inferior haber incurrido en error, (1) al permitir la demanda de intervención; (2) al desestimar las excepciones previas de defecto de partes interventoras y de insuficiencia de hechos constitutivos de causa de acción; (3) al denegar la moción que en el curso del juicio presentó la representación del apelante para que se desestimase la demanda de intervención por incongruencia *(variance)*; y (4) al apreciar la prueba y conceder al interventor $100 por sus plantaciones y permitirle llevarse la casa.

██ Los dos primeros errores han sido discutidos y declarados inexistentes en el caso de *Carrasquillo* v. *Ripoll y Montalvo,* interventor, ante, pág. 318, caso que se halla íntimamente relacionado con el de autos, y a lo que allí dijimos nos remitimos ahora.

██ En la demanda de intervención, como hemos visto, el interventor alegó que poseía las cinco cuerdas en controversia a virtud de un contrato de aparcería celebrado con Ramón Larracuente, quien, según el interventor, era el dueño de la finca principal. Sin embargo, del examen directo del interventor resulta lo siguiente:

"P. ¿Cómo vino a vivir a esa finca?—Por orden de Ramón Larracuente.

"P. ¿En virtud de qué?—Vine a trabajar, a sembrar matas.

"P. ¿Pero en qué forma?—Dos cuerdas compradas y tres arrendadas.

"P. ¿De manera que Ud. tenía entonces qué extensión de terreno? —Cinco cuerdas.

"P. ¿De las treinta y una cuerdas con veinticinco céntimos?— Sí, señor.'' (T. de E., pág. 3.)

En el curso del examen de repreguntas, aparece el siguiente incidente:

"P. ¿Dice que está en posesión de esas cinco cuerdas a virtud de que compró dos cuerdas y arrendó tres?—Sí, señor.

"P. ¿A quién compró las dos cuerdas?—A Ramón Larracuente.

"P. ¿Y las otras tres cuerdas las arrendó?—A Ramón Larracuente.

"P. ¿No poseía esas cinco cuerdas a virtud de un contrato de aparcería, como medianero de Larracuente? ¿No es cierto eso?— Tengo dos cuerdas compradas y tres arrendadas.

"P. ¿No es cierto que es medianero de él?—Arrendadas.

"P. ¿Medianero no?—Arrendadas.

"Abogado Sr. Gerena.—Solicito que se desestime la demanda de intervención, fundándonos en que la demanda se basa en que este señor poseía esas cinco cuerdas, a virtud de un contrato de aparcería con Ramón Larracuente, y ahora aparece que tenía compradas dos cuerdas y arrendadas tres.

"Hon. Juez.—Quiero oír toda la prueba y tendré en cuenta lo que ha dicho para resolver el caso, pero no lo voy a resolver ahora. La variación entre la declaración y la alegación no es suficiente para echar el caso abajo, a menos que dijera que no tenía nada, pero dice arrendó una parcela y aunque son cosas distintas no es una cosa tan absolutamente diferente para un campesino la aparcería que pueda constituir una incongruencia que hiciera a la Corte dictar sentencia inmediatamente.

"A preguntas del Hon. Juez declaró:

"P. ¿Cuando hizo el trato con Larracuente, cuáles fueron las palabras entre Ud. y Larracuente?—A don Ramón Larracuente le salí a comprar dos cuerdas de terreno y me dijo que sí y le dí treinta pesos por dos cuerdas de terreno.

"P. ¿Se las vendió?—Sí, señor.

"P. ¿Le pagó treinta pesos?—Sí, señor.

"P. ¿Qué más?—Y le dije: '¿Quiere arrendarme tres cuerdas más?', y dijo: 'Se las arriendo', y entonces me dijo: 'Quedan arrendadas.'

P. ¿Cómo fué el convenio de ese arrendamiento, a base de qué? ¿Qué daría Ud. por él?—Cinco pesos por año.

"P. ¿Por arriendo?—De las tres cuerdas, quince pesos.

"P. ¿Había comprado dos cuerdas?—Sí, señor.

"P. ¿Se las pagó?—Sí, señor.

"P. ¿Cuánto dió por ellas?—Treinta pesos.

"P. Y en cuanto a las otras tres cuerdas, ¿hizo un arrendamiento por cuánto tiempo?—Por el tiempo que las pudiera tener mientras estuviera cumpliendo.

"P. ¿Todo lo que se empleó en esas tres cuerdas hasta que lo botaron y quien pagaba las semillas y todo y trabajo?—Yo.

"P. ¿Larracuente no pagaba nada?—Nada.

"P. ¿Le pagó a Larracuente todos los años por el arrendamiento? —Sí, señor.

"P. Y después que murió Larracuente, ¿a quién le pagaba?—A la sucesión, a la viuda.

"P. ¿A qué persona?—A doña Vita.

"P. ¿Hasta cuándo pagó la última vez?—Hasta el año éste que se me cumplió. Hace tres meses que dí el último pago.

"P. Cuando Carrasquillo adquirió esa finca, ¿en alguna oportunidad lo requirió para terminar el arrendamiento que tenía en esas tres cuerdas?—Eso nunca ha sido de él.

"Abogado Sr. Gerena: Tomamos excepción a la última resolución de la Corte.

"Hon. Juez: Sin perjuicio de apreciar la cuestión cuando vaya a resolver el caso." (T. de E., págs. 9-11.)

Los artículos 136, 137 y 138 del Código de Enjuiciamiento Civil, bajo el epígrafe "De las Incongruencias, Errores y Enmiendas en Juicio", prescriben:

"Art. 136.—Ninguna incongruencia entre las alegaciones y las pruebas en un juicio se tendrá por esencial, a menos que por su índole y efectos dé lugar a que la otra parte incurra, en su perjuicio, en falsas apreciaciones al mantener su demanda o su contestación. Siempre que una de las partes resultare así equivocada, la corte podrá disponer que se enmiende la alegación en los términos que estimare justos.

"Art. 137.—Cuando la incongruencia no fuere esencial según lo previsto en el precedente artículo, la corte podrá resolver que el hecho se admita de acuerdo con la prueba, o disponer una enmienda inmediata sin costas.

"Art. 138.—Sin embargo, cuando las alegaciones de la demanda, o contestación a que se refiera la prueba, queden sin probar, no en algún particular o particulares solamente, sino en su alcance y significación general, no deberá considerarse como un caso de incongruencia, con arreglo a los dos últimos artículos, sino como deficiencia de la prueba."

El fin de la ley es la justicia. Las reglas de procedimiento, como las de evidencia, no son otra cosa que el medio para llegar a ese fin. De ahí que la infracción a una o más de estas reglas no produzca efecto legal alguno a menos que dicha infracción haya causado perjuicio a la parte que exige su cumplimiento. Inspirados en este principio y en la moderna tendencia a prescindir de la forma cuando lejos de facilitar obstaculiza la justicia, los tres artículos antes transcritos requieren que para que una incongruencia entre las alegaciones y la prueba sea fatal, la incongruencia debe ser *esencial,* es decir, que "por su índole y efectos dé lugar a que la otra parte incurra, *en su perjuicio,* en falsas apreciaciones al mantener su demanda o·su contestación."

Interpretando el artículo 136 supra, se dijo por este tribunal en el caso de *Guánica Centrale* v. *Colberg et al.,* 27 D.P.R. 684, 686:

"La verdadera intención de ese artículo es que a no ser que exista una diferencia muy esencial entre las alegaciones y la prueba deberá probarse en el juicio la esencialidad de una incongruencia."

En el caso de *Díaz et al* v. *Rosado et al.,* 30 D.P.R. 515, 530, se pronuncia este tribunal en igual sentido cuando dice:

" 'Y,' se ha dicho, 'que de acuerdo con tales estatutos no es bastante con que una parte alegue meramente que ha sido inducida a error, *sino que debe probarse a satisfacción de la corte.* Generalmente debe presentarse un *affidavit* que muestre en qué particular ha sido sorprendida o inducida a error la parte.' 31 Cyc. 703 y casos citados.

"No hubo insinuación alguna en la corte inferior, ni sugiere tampoco el alegato de los apelantes, que en ninguna forma fueran sorprendidos o inducidos a error en su perjuicio estos demandantes."

La contención del apelante es que el interventor poseía *por cuenta de Ripoll.* La del interventor, según su demanda, que poseía las cinco cuerdas a virtud de contrato de aparcería celebrado con Ramón Larracuente. Su declaración, sin embargo, fué al efecto de que poseía dos cuerdas por haberlas comprado a Larracuente y las otras tres por haberlas arrendado a la misma persona. En una u otra forma su título, tanto de acuerdo con su demanda de intervención como desde el punto de vista de su testimonio en el juicio, se deriva de Larracuente, y por consiguiente es adverso al de Ripoll, controvirtiendo así la contención del apelante. Además, el apelante, si bien quiso aprovecharse de la incongruencia, en ningún momento alegó ni probó que ella fuera esencial, es decir, que le hubiese sorprendido o inducido a error en su perjuicio. La corte inferior tampoco basó su resolución en el hecho de que el interventor fuera dueño, arrendatario o aparcero de las cinco cuerdas, sino en el de que era dueño de la casa de que fué lanzado y de la plantación que reclamaba y estimó que era de justicia impedir que el apelante

se enriqueciese a costa del interventor apropiándose ambas cosas sin la correspondiente indemnización.

█ La declaración del interventor en cuanto a las plantaciones sembradas por él y existentes en la finca al tiempo del lanzamiento, no ha sido impugnada en forma alguna. Tampoco se ha probado que él hubiera sembrado de mala fe, por lo que le favorece la presunción *juris tantum* de haber sembrado de buena fe. A lo menos que tiene él derecho, ya se considere aparcero, arrendatario o dueño, es a que se le indemnice el valor de sus plantaciones de que le privó el apelante al lanzarlo de la finca sin haberlo vencido en juicio. Asumiendo que el interventor no fuera más que un mero *sembrador de buena fe,* que es lo menos que podría concedérsele dentro de las circunstancias de este caso, no puede quejarse el apelante de la resolución de la Corte en lo que a las plantaciones concierne. A este efecto dice Sánchez Román en su tratado de ''Derecho Civil Español'':

''Existen reglas comunes a la *edificación, plantación y siembra,* que son: 1ª., se reputa que todo lo incorporado al suelo cede en favor de éste por su calidad de principal, *reservando* la de *accesoria* para lo que se incorpora o agrega; 2ª., que como nadie debe enri-quecerse en perjuicio de otro, ha de reintegrarse a su dueño del valor de los materiales, plantas o semillas y gastos de construcción, plantación o siembra que se justifiquen cumplidamente; 3ª., que procede también la indemnización de daños y perjuicios cuando intervenga mala fe por parte del edificante o por la del que plantó o sembró, probados que sean dichos daños y perjuicios; y 4ª., que *la mala fe necesita justificación especial,* puesto que la buena fe constituye una presunción *juris tantum.''* Ob. cit., tomo 3, pág. 94.

Más adelante, concretando su estudio al derecho del que planta o siembra en terreno ajeno, dice el citado autor:

''Son reglas generales para la *plantación y siembra,* las siguientes:

''1ª. El que de buena fe plantare o sembrare con plantas o semillas propias en heredad ajena, tendrá derecho, antes de devolver la heredad, a excepcionar que se le reintegre del importe de las plan-

tas o semillas, descontando el valor de los frutos que de la finca haya tomado. Si el dueño no puede pagar las plantaciones o labores, será permitido sacar de la heredad, al que las hizo, *aquello que hí metió o labró.* L. 41, tít. 28, Part. III.'' (Pág. 96.)

El interventor no apeló de la resolución de la corte y por lo tanto la consiente; como en lo que a las plantaciones concierne el pronunciamiento no perjudica al apelante, puesto que considerándolo como un mero sembrador de buena fe en terreno ajeno, se le concedió aquello a que tenía derecho, la resolución en cuanto a este extremo no debe ser alterada.

En lo que sí es errónea es en cuanto condena al apelante a permitir al interventor sacar la casa que construyó en la finca. De acuerdo con la evidencia y con la conclusión a que llegó la corte, el interventor era un *edificante de buena fe.* Siendo ello así, conforme resolvimos en los casos de *Rivera et al.* v. *Santiago,* y *Rivera et al.* v. *Torres Santiago,* ante, pág. 381, el dueño del terreno adquiere lo edificado a título de accesión, pero previamente debe pagar al edificante el valor de los materiales y de la mano de obra. De suerte que el apelante tiene el derecho de hacer suya la casa pagando la citada indemnización o permitir al edificante que la retire, si no insistiendo éste en su derecho de ocuparla hasta que se le pague la indemnización, conviene con el dueño del terreno en llevársela.

*Procede por lo expuesto, modificar la resolución apelada en el sentido de reconocer al apelante, dueño del terreno, su derecho a apoderarse de la casa pagando previamente al interventor el valor de la misma, o sea $30, que es lo que resulta de la prueba (T. de E., pág. 16), o permitírsele que la retire de la finca, y así modificada, procede confirmarla en todos sus demás pronunciamientos.*

El Juez Asociado Sr. Wolf disintió.*

---

* NOTA: Véase el prefacio.